STATE OF CONNECTICUT *v.* KEITH DWAYNE LAWS
(13325)

FOTI, HEIMAN and HENNESSY, Js.

Argued September 29—decision released December 20, 1994

*Edward M. Brown,* with whom, on the brief, were *Stanley A. Twardy, Jr.,* and *Matthew E. Winter,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Howe,* asisstant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Keith Dwayne Laws, appeals from the judgment of conviction, after a jury

trial, of robbery in the second degree in violation of General Statutes § 53a-135.[1] He claims (1) that he was illegally arrested and the evidence seized in connection with his arrest was improperly admitted at his trial, (2) that the prosecutor's improper suggestion to the jury concerning his prior felony convictions deprived him of a fair trial, (3) that the cumulative effect of the government's actions deprived him of a fair trial, and (4) that the evidence was insufficient to allow a jury to find him guilty of robbery in the second degree. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On August 8, 1991, at approximately 12:45 p.m., Carolyn Hyder, secretary at the Longfellow School in Bridgeport, was at work in her office at the school. A black male entered her office and asked her to give him her money. The man was wearing a hooded short sleeve shirt with the hood pulled down tight over his head so that only his eyes and nose were visible. He pulled out a gun, said, "Don't make me shoot you," and again asked for money. Hyder gave him $15 that she had in her pocket. As that was occurring, the phone in her office rang, she answered it and the robber left her office.

At the same time, Charles Ortiz, a security guard at Longfellow School, was patrolling the hallway of the school. He observed a man leaving Hyder's office, then he heard Hyder scream. Ortiz approached her office, and Hyder told Ortiz that she had been robbed. Ortiz ran out the front door of the school in pursuit of the

---

[1] General Statutes § 53a-135 provides in relevant part: "(a) A person is guilty of robbery in the second degree when he commits robbery . . . and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

man he had seen leaving Hyder's office. Ortiz spotted a man wearing a hooded short sleeve shirt approximately fifty feet from the front door of the school. Ortiz ran after the man yelling for him to stop. The man turned, aimed a gun at Ortiz, and turned and ran away.

Two children witnessed Ortiz' pursuit of the man in the hooded short sleeve shirt. One child, age twelve, saw the man point the gun at Ortiz and identified the man as the defendant. That child knew the defendant as a friend of his mother. The other child, age fourteen, saw the man in the hooded shirt pull out "something black" that looked like a gun. On the day after the robbery, that child identified that man as the defendant from a photographic array.

Later that day, Ortiz received a telephone call from a woman telling him that the robber was a man known as "Keithy" who lived in the P. T. Barnum housing development. One of the children who was a witness to the chase outside of the school told Ortiz that Laws lived in the P. T. Barnum housing development with Devoya Gathers.

On the basis of this information, the Bridgeport police determined that the defendant was the person responsible for the robbery at the Longfellow School. The day after the robbery, at approximately 1 p.m., Detective Gregory Iamartino and five or six other Bridgeport police officers went to Gathers' apartment to arrest the defendant. They did not have an arrest warrant or a search warrant. They knocked on the door, identified themselves as police officers, and asked if they could enter. The man who opened the door allowed them in. The police asked if Laws was there and a child who was in the room said that Laws was in the back. The officers went to a bedroom, opened the door, and saw the defendant sleeping in a bed. The defendant was awakened, and, after a brief struggle, arrested. As the

police officers were preparing to transport the defendant to the police station, the defendant asked for some clothing to bring with him. Iamartino checked a pile of clothing and found an inoperable pellet gun, which the police seized.

Following his arrest, the defendant was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[2] The case proceeded to trial. During its case-in-chief, the state introduced the inoperable pellet gun into evidence, and it was identified by Ortiz as the gun in the defendant's possession on the day of the robbery.

At trial, the defendant testified in his own defense. He neither denied that he was present in the area outside of the school at the time of the robbery, nor denied that he ran away from Ortiz. He claimed that he was walking past the school on his way home when a stranger came running at him. He explained that he thought the stranger wanted to steal his radio, and that was why he ran away.

The defendant was found guilty of robbery in the second degree as a lesser included offense of robbery in the first degree. Thereafter, the defendant entered a plea of nolo contendere to being a persistent danger-

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

ous felony offender in violation of § 53a-40 of the General Statutes.[3]

# I

The defendant's first claim is that he was illegally arrested and the admission of evidence seized in connection with his arrest tainted his trial. The defendant contends that his warrantless arrest in the apartment where he was sleeping, and the seizure of the gun at the time of the arrest, violated his constitutional rights under article first, § 7, of the Connecticut constitution[4] and the fourth amendment to the United States constitution.[5] He argues that that unconstitutional arrest and seizure tainted his prosecution in three ways. First, he claims that the gun seized in the course of the unconstitutional arrest should not have been admitted into evidence. Second, he claims that Iamartino's testimony about his resistance in the course of the arrest was improperly admitted into evidence and resulted in an

---

[3] General Statutes § 53a-40 provides in relevant part: "(a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, aggravated sexual assault in the first degree, sexual assault in the third degree with a firearm, robbery in the first or second degree, or assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder . . . ."

[4] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[5] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

improper jury charge on consciousness of guilt. Third, he claims that the fruits of the illegal arrest tainted the prosecution to such an extent that the entire prosecution should have been dismissed. We disagree.

A

The state notes that although the defendant filed a motion to dismiss the prosecution or to exclude evidence stemming from the defendant's arrest, that motion was never ruled on by the trial court, and that at trial the defendant withdrew his objection to the admission of evidence seized during the arrest. In light of that, the state argues that the defendant's claims arising from the allegedly illegal arrest have not been properly preserved for appeal.

As a general rule, an appellate court will not review claims that were not raised at the trial level. Practice Book § 4185. One of the reasons for this rule is that only the trial court has the power and authority to take evidence and make judgments concerning any contested aspects of the trial. *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). Without a trial court ruling to review, we must be wary of overstepping the bounds of our power.

In this case, the issues relating to the warrantless arrest and warrantless seizure were not ruled on by the trial court. Prior to trial, the defendant moved to dismiss the information or, in the alternative, to suppress the evidence seized in violation of his constitutional rights. No hearing was held on this motion, and no decision on the motion was issued by the trial court. During trial, the defendant objected to the introduction of the gun taken from the apartment where he had been arrested. This objection was withdrawn by the defendant, and, before the trial continued, the court noted that there was no suppression motion to be decided.

In light of the absence of action by the trial court on the motion to dismiss and suppress evidence, and the withdrawal of the objection to allowing the gun into evidence at trial, questions as to the illegality of the arrest or seizure tainting the defendant's trial were not preserved for appellate review. The defendant claims that he is nevertheless entitled to appellate review under the constitutional bypass doctrine of *Evans-Golding. State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans,* supra, 165 Conn. 70.

Under the *Evans-Golding* doctrine, unpreserved claims are reviewed and the requested relief granted "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

In response to the defendant's claim that the gun was obtained in violation of his constitutional rights, the state argues that any possible error in admitting the gun into evidence was harmless. We agree, and conclude that the claim is subject to harmless error analysis and that the state has demonstrated harmlessness beyond a reasonable doubt. See id., 241–42.

In conducting an analysis to determine if the state has demonstrated harmlessness of the claimed error beyond a reasonable doubt, we will consider all the evi-

dence that did not stem from the illegal arrest of the defendant to determine if it was sufficient to support the jury's verdict that the defendant was guilty of robbery in the second degree. Id.

In order for a jury to find a defendant guilty of robbery in the second degree, it would have to find that in the course of committing a larceny, the defendant used or threatened the immediate use of physical force on another person for the purpose of compelling the owner of such property to deliver up the property and in the course of the commission of the crime or of the immediate flight therefrom displayed or threatened the use of what he represented by his words or conduct to be a deadly weapon or a dangerous instrument. See General Statutes §§ 53a-133 and 53a-135. The jury can make such a finding from the facts in evidence and the reasonable and logical inferences that can be drawn from those facts. *State* v. *Turner,* 24 Conn. App. 264, 268, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

Hyder testified that a man took money from her while displaying a gun and threatening to shoot her. Ortiz saw a man leaving the school immediately after the robbery. Within moments of this incident, the defendant was seen walking approximately fifty feet from the front door of the school. The defendant was dressed in clothing matching the description of that worn by the person who had taken Hyder's money. The defendant also matched the description of the man Ortiz had seen leaving the school. When Ortiz requested that the defendant stop, the defendant pointed a gun at him and ran toward a nearby housing development. While Ortiz gave chase, two children saw the person he was chasing who they later identified as the defendant. One child saw the defendant point a gun at Ortiz, the other saw the defendant pull out something black that looked like a gun.

On the basis of all of this testimony and the logical inferences that could be drawn therefrom, a jury could reasonably conclude that the defendant was guilty of robbery in the second degree. Although the defendant contested being inside the school and taking money from Hyder, the jury is the sole judge of the witness' credibility and is free to find the defendant's version of events less credible than that offered by the prosecution. *State* v. *Salz,* 226 Conn. 20, 38, 627 A.2d 862 (1993). The introduction of the inoperable pellet gun into evidence did not make the defendant's denial of being inside the school any less credible, or the inference that he was the person inside the school any stronger. We conclude that even if the admission of the gun into evidence was error, it was harmless beyond a reasonable doubt. *State* v. *Golding,* supra, 213 Conn. 241–42.

B

The defendant also argues that testimony regarding his resistance to his arrest was improperly admitted in light of the illegality of the arrest. As no objection was made at the time of trial, we review this claim pursuant to the *Evans-Golding* doctrine. *State* v. *Golding,* supra, 213 Conn. 239–40; *State* v. *Evans,* supra, 165 Conn. 70. The testimony challenged here is that of Iamartino, who stated that the defendant, upon being awakened, gave minor resistance and while handcuffed and in the presence of five or six officers attempted to open a window. This testimony also served as one basis for a consciousness of guilt charge.

The defendant contends that this evidence and the resulting consciousness of guilt instruction were so detrimental to his case that he was deprived of a fair trial. We are not persuaded. Under *Golding,* a defendant "bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitu-

tional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding,* supra, 213 Conn. 240. "[O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." Id., 241.

This court has previously declined to review a consciousness of guilt charge under the second prong of *Evans-Golding,* holding that "[c]onsciousness of guilt instructions, which permit, but do not mandate, an inference of a guilty conscience, are evidentiary rather than constitutional in nature. *State* v. *Smith,* 219 Conn. 160, 165–66, 592 A.2d 382 (1991); see also *State* v. *Adams,* 225 Conn. 270, 289–90, 623 A.2d 42 (1993)." *State* v. *Merritt,* 36 Conn. App. 76, 96, 647 A.2d 1021, cert. granted on other grounds, 231 Conn. 926, 648 A.2d 165 (1994). Here, the defendant's challenges to Iamartino's testimony and the consciousness of guilt charge are evidentiary and not constitutional in nature. We find it unnecessary to consider this claim of error further.

C

The defendant also argues that his illegal arrest and the use of evidence gathered therefrom should result in all charges being dismissed. In support of this argument he cites *State* v. *Federici,* 179 Conn. 46, 425 A.2d 916 (1979). We conclude that *Federici* is inapposite. In *Federici,* illegally seized weapons were the only evidence supporting probable cause to arrest the defendant. In this case, there was significant evidence of guilt apart from the pellet gun. This case is controlled by *State* v. *Fleming,* 198 Conn. 255, 263, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), in which our Supreme Court held that "[w]here the fairness of a subsequent prosecution has

not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction. '[D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards.' *Frisbie* v. *Collins,* [342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541 (1952)] . . . ." (Citations omitted.) Because we are convinced of the harmlessness of any error resulting from the admission of evidence stemming from the allegedly illegal arrest and seizure, we conclude that even if the arrest of the defendant was illegal, it did not taint the prosecution so as to compromise the defendant's right to a fair trial.

## II

The defendant's second claim is that the prosecutor's improper reference to the defendant's thirteen prior felony convictions during closing argument deprived him of a fair trial under article first, § 8, of the Connecticut constitution[6] and the fourteenth amendment to the United States constitution.[7] The defendant argues that during closing argument the prosecutor invited the jury to convict the defendant of the crime charged on the basis of his prior convictions. Because the defendant failed to make a timely objection to the prosecutor's closing argument, he requests that we review this claim pursuant to the *Evans-Golding* doctrine. See *State* v. *Golding,* supra, 213 Conn. 239–40; *State* v. *Evans,* supra, 165 Conn. 70. We find that the

---

[6] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[7] The fourteenth amendment to the United States constitution, which guarantees citizens that the states will not infringe their due process rights, provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

defendant has failed to demonstrate that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial" and, thus, we dispose of his claim under the third *Golding* criteria. *State* v. *Golding,* supra, 239–40.

"In analyzing the defendant's claim [of prosecutorial misconduct], we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams,* 204 Conn. 523, 539–40, 529 A.2d 653 (1987); see also *State* v. *Robinson,* 227 Conn. 711, 745–46, 631 A.2d 238 (1993).

There are no allegations of prosecutorial misconduct outside closing argument. When the defendant took the stand on his own behalf he was cross-examined by the state about his thirteen prior felony convictions. In keeping with the trial court's ruling on a motion in limine, the state confined its inquiry into these prior convictions to the purpose of impeaching the defendant's credibility. During his own closing argument, the defendant brought up the thirteen prior felony convictions and suggested that he had been arrested and tried for this crime only because of those convictions.[8] The

---

[8] In closing argument the defendant's counsel stated: "Defendant testified, defendant said, 'I not only spoke to [Mr. Ortiz] once, I spoke to him twice.' . . . You're permitted as to every witness to accept some, all or none of what anybody says on the stand. If I were the state's attorney I would tell you that that statement that Mr. Laws made when he testified is capable of being believed, but not the rest. After all, a guy with thirteen felonies, or what is he, he's nothing. He committed thirteen felonies he must have committed this one. You see, what you see in this case is the development of a snowball, it's the old fashion snowball. Something happens in

state, in its closing argument, then responded to this argument, contending that when police act swiftly in apprehending a suspect it is natural for them to take into consideration his or her prior record, and that the defendant's criminal history might also be a factor in guiding the defendant's own actions during and after the commission of a crime. The prosecutor never suggested that the jury could convict the defendant of this crime because of his prior record of thirteen felony convictions.[9]

---

the school and there's an assumption that the man walking outside the gate is the person that held the lady up, an assumption. And there is a subsequent confrontation . . . . [Then] he gets a telephone call from an unnamed person, unnamed person. The person that stuck up the secretary is Keithie, so he goes back outside and he says to the two kids, 'Anybody know who Keithie is?' They says, 'Yeah, he just walked by here a few minutes ago.' Cops get involved. Keithie, Keithie, who's Keithie? Keith Laws. That dude he's got thirteen felonies, let's go get him. They go get him the next day, never thinking about getting a warrant, forget that, that doesn't mean nothing. If he committed those thirteen crimes he had to commit this one. . . . So we get the telephone call . . . . Who creates a name, that name was fed back to the kids, the kids know the person, hey, we got the crime solved, we don't need a trial and we don't need anything, let's go pick him up and slam him in. After all, this is easy, this is like—this is like shooting fish in a barrel. This dude lives in the project, thirteen crimes. It must be, I mean, if he committed the thirteen crimes he must have committed this one. The court will give you instructions on that. . . . The significance of who put Keith's name into whose minds is very important. . . . See, that's the whole key, it's thirteen times before, that's why we're here. Because it could be any black guy but now we've got a guy who's been in trouble thirteen times. I mean, maybe the state does, I mean, the state figures if he doesn't want another odd number so we make it an even number, we'll make it fourteen times. Unfortunately, I think that's the cement that [holds] this whole thing together, that's the cement that caused everybody to run and—and to do things a little bit out of the ordinary and a little bit outside the rules, but nonetheless, because we have so-called a bad guy that we're looking for we can do whatever we have to do. . . . You may choose because of his record not to believe a darn thing he said, that's your privilege, that's essentially, and I'm—I'm thinking whether he's with the—the definition of law, but it's essentially what—what could happen, you can disbelieve him because of his record, but you can't convict him because of his past deeds."

[9] In her closing argument, the prosecutor stated: "Ladies and gentlemen, the defense raised an argument concerning the defendant's prior convic-

Viewed in this context, the defendant's claim that the words used by the prosecutor amounted to serious misconduct, depriving him of a fair trial, cannot succeed. The alleged misconduct is restricted to a single incident at the end of the trial, and, when the closing arguments of both sides are scrutinized, no misconduct can be found. Furthermore, the trial court clearly instructed the jury as to the presumption of innocence and explicitly directed that the defendant's thirteen prior felony convictions should be considered in connection only with the defendant's credibility, not with the defendant's guilt in this instance.[10] We conclude

tion. Now I am not allowed to argue that if someone has committed a crime before they'll commit a crime again, that—that's not an appropriate argument, the case law claims it's not appropriate, the judge will tell you what you can use a prior conviction for. Counsel did make a remark though, concerning the defendant's background which you [have] come to hear, of something affecting, somehow making a foregone conclusion that the only reason that Keith Laws was arrested is because of his prior convictions. Now I would agree with counsel that the fact that a person does have thirteen prior felony convictions is a factor a police officer can reasonably consider in acting swiftly to apprehend that person. That's a logical thing to consider for the officer's conduct. And I would also agree with counsel that the fact that the remark he made, 'Well, a person's done his time and then . . . the state may argue to you well he hasn't learned his lesson.' And I am arguing that does make sense, yes, when a person can go to prison or be convicted of a felony and not learn their lesson, absolutely. That—that's a matter of human nature. There are also things that a person can realize if the background counsel is referring to, defense counsel is referring to which are things like, a person can commit a crime and a witness can see that crime and that witness can be afraid to come forward. That witness may want to help the authorities but they're not going to give them a call, they're not going to come forward to court, that's something you can learn also, they haven't been through the criminal justice system. You can learn that you can commit a crime, in particular in a housing project and people who know you can see you do it or can see part of it and they'll be afraid to come to court, you can know that. You can learn that not every crime that's committed, a person gets caught. You can learn that if you commit a crime, it's wise when you're committing it to try to conceal your identity and then after you commit it, it's wise to act as normal as possible. You can learn that too."

[10] The court addressed the subject of the defendant's credibility as a witness in light of his prior felony convictions as follows: "You'll learn that

that the defendant has not demonstrated that the alleged misconduct during closing argument clearly existed or that it in any way deprived him of a fair trial. *State* v. *Golding*, supra, 213 Conn. 239–40.

## III

The defendant next argues that the cumulative effect of the state's actions deprived him of his due process rights under article first, § 8, of the Connecticut constitution.[11] The defendant argues that his illegal arrest, the admission of the illegally seized gun into evidence, and the prosecutor's suggestion that the defendant's felony convictions could be considered as evidence of guilt, taken together, compel a finding that the defendant's conviction must be set aside. Our previous holdings, that the state has demonstrated the harmlessness of any error resulting from the testimony and evidence derived from the allegedly illegal arrest, and that no prosecutorial misconduct occurred, lead us to reject this claim of error.

## IV

The final argument presented by the defendant is that the evidence was insufficient to allow the jury to find him guilty of robbery in the second degree. The

while he was on the witness stand that [the defendant] admitted to having been convicted previously of thirteen crimes which were classified as felonies. . . . Now evidence of such conviction may be considered by you as affecting the credibility of such a witness. . . . I emphasize, however, that it may only be used in connection with the witness' credibility. Whereas here the witness is also the defendant you may not use the evidence of the prior felony convictions as evidence of his guilt of this offense that is charged. You may not infer that because he was convicted of a felony before that he is likely to have committed this offense. You may, however, if you find that it bears on his credibility, use those convictions to find that he is not a believable witness and that therefore all or some of his—of his versions of the events in question is not true. . . . In other words, the—the proof of the prior criminal record is to be used by you as affecting the witness' testimony only."

[11] See footnote 6.

defendant claims that the evidence proves, at the most, that he was present outside the school, near the time of the robbery, with an inoperable gun, and that there is no direct evidence that he was the robber. As we have discussed, from the evidence presented, even disregarding the inoperable pellet gun, the jury could reasonably have inferred that the defendant entered the school, displayed a gun and took money from Hyder. Therefore, the jury could reasonably have found the defendant guilty of robbery in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.