******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CALEB
T. HALL-GEORGE
(AC 42574)

Alvord, Prescott and Suarez, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of robbery in the second degree, the defendant appealed to this court. The defendant, wearing baggy clothing, including a sweatshirt, entered a bank and approached a teller station. He passed a withdrawal ticket to the teller, and told the teller to give him all the money and no one would get hurt. On the back of the withdrawal ticket was a handwritten note, which stated: "Give me . . . all the money and no one gets hurt." It also stated: "It's in my sweatshirt." The teller complied and gave the defendant the money. The defendant then left the bank. On appeal, the defendant claimed that the evidence was insufficient to prove beyond a reasonable doubt that he threatened the use of what he represented by his words or conduct to be a deadly weapon or dangerous instrument as required by statute (§ 53a-135 (a) (1) (B)). *Held* that the evidence was sufficient for the jury reasonably to have found that the defendant represented that he had a deadly weapon or dangerous instrument in his sweatshirt and that he threatened to use it if the teller did not give him money; the defendant orally and in writing threatened to harm the bank staff if his demand for money was not met, and, immediately following the written threat of harm on the note, was the statement that "it" was in his sweatshirt, a statement that the jury reasonably could have inferred made reference to what the defendant would use to carry out the harm he threatened, namely, an object that he had concealed under his sweatshirt, it was reasonable for the jury to infer that his sweatshirt, which surveillance video and photographs showed was baggy, was capable of concealing a deadly weapon or dangerous instrument, and, given the fact that his threat was made during a bank robbery, it was reasonable for the jury to infer that he had threatened to inflict serious physical injury or death if his demands were not met.

Argued December 8, 2020—officially released March 9, 2021

*Procedural History*

Substitute information charging the defendant with two counts of the crime of robbery in the second degree, brought to the Superior Court in the judicial district of New Britain and tried to the jury before *Dewey, J.*; verdict and judgment of guilty; thereafter, the court dismissed one of the two counts, and the plaintiff appealed to this court. *Affirmed.*

*Adele V. Patterson*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, and *Robert Mullins*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SUAREZ, J. The defendant, Caleb T. Hall-George, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the second degree in violation of General Statutes § 53a-135 (a) (1) (B). The defendant claims that the evidence was insufficient to prove beyond a reasonable doubt that he threatened the use of what he represented by his words and conduct to be a deadly weapon or dangerous instrument, as required by § 53a-135 (a) (1) (B). We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. At approximately 4:10 p.m. on April 28, 2017, the defendant entered a branch of Farmington Bank in New Britain. The defendant was dressed in dark, baggy clothing, including a sweatshirt with the hood pulled over his head. The defendant is approximately five feet, seven inches tall, and had a skinny build. The defendant remained in the lobby of the bank for approximately one hour, during which time he went to a workstation in the middle of the bank, where he picked up a pen and a piece of paper. He then sat in a guest chair with a magazine or brochure in his lap on which he began writing. While in the bank, during which time his activities were recorded by bank surveillance cameras, he occasionally held to his ear what appeared to be a cell phone.

Shortly after 5 p.m., the defendant approached the teller station at which Jessica Martinez, a bank supervisor, was working. The counter at the teller station was slightly taller than the defendant's waist, and rising from either side of the station were dividers about the same height as the defendant's shoulders. The dividers supported a piece of glass that separated Martinez and the defendant. The defendant positioned his head such that he was hovering over this glass during his interaction with Martinez.

Martinez asked the defendant how she could assist him. The defendant then passed a withdrawal ticket to Martinez and mumbled, "give me all the money and no one will get hurt." The front side of the withdrawal ticket had "4-28-17" handwritten on the date line, "Anthony Springer" handwritten on the name line, and "Anthony" handwritten on the signature line. On the back side of the withdrawal ticket was a handwritten note, which stated: "Give me . . . [a]ll the money and no one gets hurt. . . . It's in my sweatshirt. Make it quick . . . 100's 50's 20's 10's 5's . . .  Make it quick." Martinez, acting under the belief that "something could possibly happen" if she did not comply with the defendant's demands, gave the defendant $613 in currency. The defendant left the bank at 5:05 p.m. The police were called and arrived at the bank approximately three

minutes later.

James Wozniak, an officer for the New Britain Police Department, arrived at the bank, where he found Martinez, who "appeared in shock and was emotional, crying." A state forensic laboratory analyzed the defendant's note and found both latent fingerprints and DNA on it. Analysis of the evidence supported a finding that one fingerprint matched the defendant's right index finger and two other fingerprints matched his right middle finger. The DNA found on the note was determined to be consistent with that of the defendant.

The fingerprint analysis led the police to the defendant, and they attempted to locate him at an address in Willimantic. Ivette Santiago, who was dating the defendant at the time of the robbery, lived at this address and was there when the police arrived. Two New Britain police officers spoke with Santiago, who provided the police with two cell phone numbers that she had used to communicate with the defendant. Santiago identified the cell phone number that the defendant used to contact her around the time of the robbery. The police then obtained cell phone records for this phone number after executing a search warrant. These phone records showed that at 4:40 and 5:06 p.m. on the date of the robbery, the defendant's phone accessed a cellular antenna that was mounted on a New Britain church steeple that "[pointed] right toward the Broad Street area where the bank [was]" located.

The defendant was arrested on October 19, 2017. On August 22, 2018, by way of a two count, long form information, the state charged the defendant with one count of robbery in the second degree in violation of § 53a-135 (a) (1) (B) and one count of robbery in the second degree in violation of § 53a-135 (a) (2) (B). The case was tried to a jury over the course of four days, starting on September 24, 2018. The state rested on September 27, 2018, the third day of trial. Immediately thereafter, the defendant orally moved for a judgment of acquittal.[1] The court denied the motion. The defendant then rested without presenting evidence. On September 28, 2018, the court held a charging conference on the record, followed by the closing arguments of counsel. The court then delivered the charge, and the jurors began to deliberate. Later that day, the jury returned guilty verdicts as to both counts.

On October 2, 2018, the defendant filed a motion for a judgment of acquittal after the verdict pursuant to Practice Book § 42-51, asserting that the jury did not hear sufficient evidence to find beyond a reasonable doubt that the defendant committed the crimes with which he was charged. On October 4, 2018, the defendant filed an amended motion for a judgment of acquittal after the verdict, which contained the same arguments. The court denied both motions on December 3, 2018.

On December 3, 2018, the court sentenced the defendant to a period of seven years of incarceration on each of the two counts. Immediately after sentencing, the trial court noted that "[o]ne of those counts [had] to be dismissed because you can't be guilty of the two counts of that one single act." Accordingly, the court concluded that "[t]he second count [was] dismissed pursuant to case law . . . ."[2] This appeal followed. Additional facts and procedural history will be set forth as necessary.

The defendant claims that the evidence was insufficient to prove beyond a reasonable doubt that he threatened the use of what he represented by his words and conduct to be a deadly weapon or dangerous instrument, as was required by § 53a-135 (a) (1) (B). We disagree.

"We begin our analysis by setting forth the well settled standard of review applicable to a sufficiency of the evidence claim, wherein we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical. . . .

"[T]here is a fine line between the making of reasonable inferences and engaging in speculation—the jury

is allowed only to do the former. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. . . .

"Finally, on appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Hazard*, 201 Conn. App. 46, 53–55, 240 A.3d 749, cert. denied, 336 Conn. 901, 242 A.3d 711 (2020).

Next, we identify the essential elements of the offense. Section 53a-135 (a) (1) (B) provides in relevant part: "A person is guilty of robbery in the second degree when such person . . . commits robbery, as defined in section 53a-133,[3] and . . . in the course of the commission of the crime or of immediate flight therefrom, such person . . . displays or threatens the use of what such person represents by such person's words or conduct to be a deadly weapon[4] or a dangerous instrument[5] . . . ." (Footnotes added.) "In order for a jury to find a defendant guilty of robbery in the second degree, it would have to find that in the course of committing a larceny, the defendant used or threatened the immediate use of physical force on another person for the purpose of compelling the owner of such property to deliver up the property and in the course of the commission of the crime or of the immediate flight therefrom displayed or threatened the use of what he represented by his words or conduct to be a deadly weapon or a dangerous instrument." *State* v. *Laws*, 36 Conn. App. 401, 409, 651 A.2d 273 (1994), cert. denied, 232 Conn.

921, 656 A.2d 671 (1995).

As to count one, the state alleged the following in the information: "[The defendant], in the course of the commission of the crime of robbery, as defined in [§] 53a-133 . . . threatened the use of what he represented through words and conduct to be a deadly weapon or dangerous instrument, *to wit*: passing a note indicating he had a deadly weapon or dangerous instrument, in his waistband to the bank teller, said conduct is in violation of [§] 53a-135 (a) (1) (B) . . . ." (Emphasis in original.)

The state presented the following evidence to prove that the defendant had represented that he had a deadly weapon or a dangerous instrument.[6] Martinez testified that the defendant stated to her, "give me all the money and no one will get hurt." The note that the defendant gave to Martinez, which was in evidence, stated in relevant part: "Give me . . . [a]ll the money and no one gets hurt. . . . It's in my sweatshirt." Surveillance video and photographs of the defendant in the bank while wearing the sweatshirt were in evidence. Martinez also testified that the defendant's build was "[s]kinny" and that his "clothes were really kind of baggy on him." Surveillance video showed that the counter at the teller station was slightly higher than the defendant's waist. Martinez testified that when the defendant came to the counter, "he was kind of like hovered over the glass" that separated them.

The defendant focuses on the language of the note and argues that the handwritten note to the teller was not sufficient to permit a jury to find beyond a reasonable doubt that he threatened to use what he represented was a deadly weapon or a dangerous instrument. He contends that "the mere claim to possess an unspecified 'weapon' is insufficient to establish this essential element of the crime as charged." Further, he asserts that the jury impermissibly resorted to speculation to infer that the phrase "[i]t's in my sweatshirt" meant that he was threatening to use a deadly weapon or dangerous instrument.

The state argues that the jury reasonably could have concluded that the cumulative effect of the evidence presented at trial established guilt beyond a reasonable doubt. The state points to the following evidence as being sufficient to prove beyond a reasonable doubt that the defendant's words and actions implied that he was armed with a deadly weapon or a dangerous instrument that was capable of causing death or serious physical injury: "The defendant (1) appeared at [Martinez'] window wearing a closed-front sweatshirt; (2) was separated from Martinez by a thick counter structure and a clear partition that rose to chest/shoulder height; (3) said to Martinez, 'give me all the money and no one will get hurt'; and (4) handed Martinez a note saying, 'Give me . . . [a]ll the money and no one gets hurt.

. . . It's in my sweatshirt.' "

To support this argument, the state cites *State* v. *Hawthorne*, 175 Conn. 569, 402 A.2d 759 (1978), a case in which a defendant was convicted of robbery in the first degree under General Statutes § 53a-134 (a) (4),[7] which contains language almost identical to the language of § 53a-135 (a) (1) (B). The difference between the two statutes is that § 53a-135 (a) (1) (B) covers the display or threatened use of deadly weapons and dangerous instruments, as opposed to only the display or threatened use of firearms. Because of the similarity in statutory language, *Hawthorne* provides us with some guidance. In *Hawthorne*, our Supreme Court stated that "the essential element of subsection (a) (4) . . . is the *representation* by a defendant that he has a firearm. Under this portion of § 53a-134, a defendant need not have an operable firearm; in fact, he need not even have a gun. He need only *represent* by his words or conduct that he is so armed." (Emphasis in original.) *State* v. *Hawthorne*, supra, 573; see also *State* v. *Bell*, 93 Conn. App. 650, 670, 891 A.2d 9 (quoting same language from *Hawthorne*), cert. denied, 277 Conn. 933, 896 A.2d 101 (2006). Applying that rationale to the statutory language of § 53a-135 (a) (1) (B), a defendant need only represent by his words *or* conduct that he is armed with a deadly weapon or dangerous instrument.

The state points to prior cases in which this court has held that evidence similar in nature to that presented to the jury in the present case was sufficient to prove beyond a reasonable doubt that a defendant had represented that he was armed in violation of § 53a-134 (a) (4). Although cases of this nature are inherently fact-specific, given the similarities between § 53a-134 (a) (4) and § 53a-135 (a) (1) (B), we find these cases to be instructive. In *State* v. *Bell*, supra, 93 Conn. App. 670–71, the defendant told the robbery victim that she "wouldn't get hurt" if she did what he told her to do, while holding something under his jacket that the victim testified "looked like a gun." In *State* v. *St. Pierre*, 58 Conn. App. 284, 288–89, 752 A.2d 86, cert. denied, 254 Conn. 916, 759 A.2d 500 (2000), "the defendant announced, '[t]his is a holdup,' and raised his right arm which remained hidden in his jacket from beneath the counter to counter level, while stating he was serious about holding up the store." In *State* v. *Arena*, 33 Conn. App. 468, 471, 477, 636 A.2d 398 (1994), aff'd, 235 Conn. 67, 663 A.2d 972 (1995), the defendant told the victim to "hurry up" and "nothing will happen," while pointing an object in an opaque plastic shopping bag that the victim thought looked like a gun. In each of these cases, the defendants did not state that they had firearms on their person. The defendants' conduct *and* words, however, were sufficient for the juries to reasonably infer that the defendants wanted the victims to *think* that they had firearms. See *State* v. *Bell*, supra, 671. When weighing the sufficiency of the evidence in both *Bell* and *Arena*,

this court noted that implicit in the defendants' statements were threats of harm. See id.; *State* v. *Arena*, supra, 477.

In the present case, the evidence demonstrated that, during the commission of the bank robbery, the defendant orally and in writing threatened harm to bank staff if his demand for money was not met. Immediately following the written threat of harm in the note that the defendant gave to Martinez was the statement, "[i]t's in my sweatshirt." The jury reasonably could have inferred that the note made reference to what the defendant would use to carry out the harm he threatened, namely, an object that he had concealed under his sweatshirt. It was also reasonable for the jury to infer that, in light of the fact that the defendant's threat was made during a bank robbery, he had threatened to inflict serious physical injury or death if his demands were not met. Thus, it was reasonable for the jury to find that the "it" that was under his sweatshirt was a type of object capable of inflicting such degree of harm. We are likewise mindful that Martinez' testimony and the surveillance video and photographs showed that the defendant's sweatshirt was baggy. Based on this testimony and evidence, the jury could have reasonably inferred that the defendant's sweatshirt was capable of concealing one of the deadly weapons or dangerous instruments described in General Statutes § 53a-3 (6) and (7). The jury reasonably could have found that the height of the counter and the defendant's posture while he was standing at the counter could have allowed him to further conceal whatever was in his sweatshirt.

When construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant represented that he had a deadly weapon or a dangerous instrument in his sweatshirt *and* that he threatened to use it if Martinez did not give him the money he requested. Accordingly, we conclude that the evidence was sufficient for a jury to find the defendant guilty of robbery in the second degree in violation of § 53a-135 (a) (1) (B).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] A motion for a judgment of acquittal at the conclusion of the state's case-in-chief is permitted under Practice Book § 42-41.

[2] The defendant has appealed from the judgment of conviction rendered on December 3, 2018, under § 53a-135 (a) (1) (B). In his appellate brief, the defendant nevertheless claims that the evidence presented at trial was insufficient to prove that all of the elements of § 53a-135 (a) (2) (B) were met. He raises this claim out of "an abundance of caution," to preserve the claim in the event that a reversal of his conviction under § 53a-135 (a) (1) (B) results in a reinstatement of the conviction under § 53a-135 (a) (2) (B).

The defendant also asserts that because the court dismissed, rather than vacated, his sentence under § 53a-135 (a) (2) (B), the conviction "cannot be revived without violating [his] constitutional protection against double jeopardy under the fifth and fourteenth amendments." The defendant notes that, although "the state did not request the dismissal, it also did not object and did not request permission to appeal." He contends that the dismissal

"is a final judgment beyond the reach of this court . . . ."

The state argues that "the trial court merely misspoke when it referred to count two being dismissed." The state asserts that the court's statement that "you can't be guilty of the two counts of that one single act" is "an obvious reference to the double jeopardy concerns that were recognized and remedied via vacatur in *State* v. *Polanco*, [308 Conn. 242, 61 A.3d 1084 (2013)], and its progeny." Further, the state contends that, "had the trial court intended to enter an outright dismissal of count two, as opposed to effectuating *Polanco*, it would have had no reason to first impose a sentence thereon."

Because we affirm the defendant's conviction under § 53a-135 (a) (1) (B), we need not reach the merits of his claim regarding his conviction under § 53a-135 (a) (2) (B).

[3] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[4] General Statutes § 53a-3 (6) defines "deadly weapon" as "any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. . . ."

[5] General Statutes § 53a-3 (7) defines "dangerous instrument" in relevant part as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

[6] The defendant does not dispute on appeal that the evidence was sufficient to prove beyond a reasonable doubt that he committed a robbery. He disputes only that the evidence was sufficient to prove that, in the commission of the robbery, he represented that he had a deadly weapon or a dangerous instrument.

[7] General Statutes § 53a-134 (a) (4) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."