******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JOSEPH
A. STEPHENSON
(AC 40250)

Alvord, Prescott and Alexander, Js.

*Syllabus*

Convicted of the crimes of burglary in the third degree, attempt to commit
tampering with physical evidence and attempt to commit arson in the
second degree in connection with a break-in at a courthouse, the defen-
dant appealed to this court, claiming, inter alia, that the evidence was
insufficient to support his conviction of all three offenses. At the time
of the events at issue, the defendant had two felony charges pending
against him and was scheduled to commence jury selection in a trial
of those charges. Two days before the start of jury selection, a silent
alarm was triggered at the courthouse at about 11 p.m. The police
discovered, inter alia, a broken window that provided ingress to an
office shared by assistant state's attorneys, a duffel bag containing six
canisters of industrial strength kerosene on the floor of the hallway
outside the office, and case files atop a desk that had two of its drawers
open and other files scattered on the floor. Surveillance video also
depicted a vehicle, similar to one the defendant drove, driving by the
courthouse repeatedly in the hours before the break-in, and, while the
defendant was in custody after having been convicted of other charges
that had been pending against him, he asked his brother, in a recorded
telephone call, to get rid of "bottles of things" for a heater, speculated
about how the police located the vehicle and attempted to arrange an
alibi. On the defendant's appeal to this court, this court concluded
that the state had failed to produce sufficient evidence regarding the
defendant's intent to commit tampering, which was a requirement com-
mon to all of the charged offenses, reversed the defendant's conviction
and remanded the case to the trial court with direction to render judg-
ment of acquittal as to all three charges. Our Supreme Court thereafter
granted the state's petition for certification to appeal, reversed this
court's judgment and remanded the case to this court for further proceed-
ings. On remand, the defendant reiterated his claim that the evidence
was insufficient to support his conviction of all three charges and
asserted that the court improperly excluded testimony from L, who had
represented him on the felony charges, that, prior to the break-in, the
defendant had told L that he intended to plead guilty to the felony
charges, which the defendant alleged would have provided a defense
to his motive to disrupt or delay the proceedings against him. *Held*:

1. The defendant's claim that the evidence was insufficient to support his
conviction was unavailing:

   a. The totality of the evidence regarding the defendant's actions before,
   during and after the break-in supported the jury's finding that he broke
   into the prosecutors' area of the courthouse with the intent to tamper
   with evidence: from the manner in which the defendant conducted recon-
   naissance of the closed courthouse late at night and his chosen point
   of entry, the jury reasonably could have inferred that he planned to
   engage in criminal conduct and wanted to gain access to the office of
   the prosecutor who was handling the pending felony charges and to his
   own specific file, and the reasonable inference that the staff of the
   prosecutor's office would not have left files strewn on the floor permitted
   the jury's successive reasonable inference that it was the defendant who
   had been searching for his own case file and that, if he could tamper
   with it, the state would be unable to secure a conviction against him;
   moreover, that the defendant brought industrial strength kerosene into
   an office filled with combustible materials provided a reasonable basis
   for the jury to infer that he intended to start a fire that would consume
   the file associated with his case and any physical evidence contained
   therein, and that he understood that he also needed to destroy other
   files to cover up his destruction of the evidence in his case; furthermore,
   those reasonable inferences were supported by the defendant's conduct
   after the break-in, which included his flight from the courthouse, a

phone call he made to the public defender's office inquiring whether the courthouse would be open on the day after the break-in and incriminating statements he made to his family.

b. Contrary to the defendant's assertion that the evidence was insufficient to support his arson conviction because the state failed to prove that he committed the completed crime of tampering with physical evidence, the state's burden was to prove that he intended to start a fire to conceal the crime of tampering with physical evidence and that he had taken a substantial step in a course of conduct planned to culminate in his commission of the crime; moreover, the jury reasonably could have inferred that the defendant, by bringing kerosene into an area packed with files and other combustibles, possessed the requisite intent to damage or destroy the building as a natural consequence of his actions, and, even if his primary intent was to damage or destroy the files in the prosecutors' office area, the jury reasonably could have inferred that he also intended to damage the building to achieve that objective.

c. Notwithstanding the defendant's contention that his tampering conviction could not stand because the state failed to prove that any materials in the prosecutors' office constituted "physical evidence" as defined by statute (§ 53a-146 (8)), this court was not persuaded by his assertion that, even though the text of the tampering statute ((Rev. to 2013) § 53a-155) does not contain the phrase "physical evidence," the legislature intended to incorporate its definition in § 53a-146 (8) as an element of § 53a-155 because "physical evidence" is included in the title of § 53a-155; despite the title of § 53a-155, the plain language of the text of § 53a-155 required the state to prove that the defendant, believing that an official proceeding was pending, altered, destroyed, concealed or removed any record, document or thing with the purpose of impairing its verity or availability in an official proceeding.

2. The defendant could not prevail on his claim that the trial court's improper exclusion of his statement to L constituted harmful error:

a. Although the trial court abused its discretion by excluding the statement, which the defendant contended was admissible as evidence of his then existing mental state pursuant to § 8-3 (4) of the Connecticut Code of Evidence, he was not deprived of his constitutional rights to present a defense, as he was able to present his defense that he was not the perpetrator as well as alibi evidence via the testimony of his brother, and the defendant challenged the state's evidence regarding the issue of identity; moreover, the state presented considerable evidence regarding the defendant's activities prior to, during and after the break-in to establish his identity as the perpetrator and his intent, and his motivation to disrupt the court proceedings remained, as his stated interest in pleading guilty to the prior felony charges may have been diminished upon the realization that the offered plea agreement involved incarceration.

b. The trial court's improper exclusion of L's testimony did not constitute harmful error, as the state introduced substantial evidence of the defendant's identity and actions with respect to the offenses with which he was charged, and the period of incarceration that would have resulted from his stated intention to plead guilty to the prior felony charges may have provided him with an incentive to commit the burglary, arson and tampering offenses such that a fair assurance existed that the improper exclusion of L's testimony did not substantially affect the jury's verdict.

Argued March 11—officially released August 31, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of burglary in the third degree, attempt to commit tampering with physical evidence and attempt to commit arson in the second degree, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number twenty, and tried to the jury before *White, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, *Sheldon, Bright* and *Mihalakos, Js.*, which reversed the trial court's judgment and remanded the case to that court with direction to render judgment of acquittal; thereafter, the state, on the granting of certification, appealed

to the Supreme Court, which reversed this court's judgment and remanded the case to this court for further proceedings. *Affirmed.*

*Vishal K. Garg*, for the appellant (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Michelle Manning*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. This appeal returns to us on remand from our Supreme Court. In *State* v. *Stephenson*, 187 Conn. App. 20, 201 A.3d 427 (2019), rev'd, 337 Conn. 643, A.3d (2020), the defendant, Joseph A. Stephenson, appealed from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103, attempt to commit tampering with physical evidence in violation of General Statutes § 53a-49 (a) (2) and General Statutes (Rev. to 2013) § 53a-155 (a) (1),[1] and attempt to commit arson in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-112 (a) (1) (B). The court imposed a total effective sentence of twelve years of incarceration followed by eight years of special parole. On appeal, the defendant claimed that (1) the state presented insufficient evidence to support his conviction of those charges, and (2) the court improperly excluded evidence regarding his mental state prior to the commission of those offenses.

This court concluded that the state had failed to produce sufficient evidence regarding the defendant's intent to commit the crime of tampering with physical evidence, a requirement common to all the charged offenses. Id., 39. Accordingly, we reversed the defendant's conviction and remanded the case with direction to render a judgment of acquittal on all three charges. Id. As a result of this conclusion, we did not address the other claims raised by the defendant in his appeal. See id., 30 n.4, 39.

After granting the state's petition for certification to appeal, our Supreme Court reversed the judgment of this court. *State* v. *Stephenson*, supra, 337 Conn. 654. Specifically, it agreed with the state that this court improperly had "addressed an issue of evidentiary sufficiency sua sponte without calling for supplemental briefing as required by *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 84 A.3d 840 (2014) (*Blumberg*)." *State* v. *Stephenson*, supra, 645–46. As a result of this conclusion, our Supreme Court remanded the case to this court "in order to address the claims raised by the defendant in his initial appeal. If, during that proceeding, the Appellate Court chooses to exercise its discretion to reach the sufficiency issue raised in its previous decision, it must do so in a manner consistent with this court's decision in *Blumberg*." Id., 654; see also *Stephenson* v. *Commissioner of Correction*, 203 Conn. App. 314, 317 n.2, 248 A.3d 34, cert. denied, 336 Conn. 944, 249 A.3d 737 (2021).

In accordance with the directive from our Supreme Court, we ordered the parties to file simultaneous supplemental briefs addressing whether the evidence was sufficient to prove the defendant's intent to tamper with

physical evidence. Following the receipt of the parties' supplemental briefs, we heard additional oral argument.

With this recitation of the appellate history of the case in mind, we set forth the issues before us, as presented in the defendant's original and supplemental briefs. The defendant first claims that the state failed to present sufficient evidence to support his conviction. Specifically, he argues that the evidence was insufficient to prove that (1) he had intended to tamper with evidence, an element common to all three offenses charged by the state, (2) he had (a) committed the completed crime of tampering with evidence or (b) intended to destroy or damage a building, which are elements of the offense of attempt to commit arson in the second degree as charged in this case, and (3) he had tampered with items that constituted physical evidence for the purpose of § 53a-155 (a) (1). Second, the defendant claims that the court erred in excluding evidence regarding his mental state prior to the commission of these offenses. Specifically, he argues that he suffered harm as a result of the court's improper ruling, or, in the alternative, that he was deprived of his constitutional rights to present a defense and that the state failed to demonstrate that the court's ruling was harmless beyond a reasonable doubt.

As to the defendant's first claim, the state counters that the evidence adduced at trial was sufficient to support the defendant's conviction. With respect to his second claim, the state concedes that the court's evidentiary ruling constituted an abuse of discretion but asserts that it amounted to harmless error. We agree with the state on both claims and, accordingly, affirm the judgment of conviction.[2]

In its decision, our Supreme Court set forth the follow relevant facts and procedural history. "A silent alarm at the [Norwalk] courthouse was triggered at around 11 p.m. on Sunday, March 3, 2013, when the defendant entered the state's attorney's office by breaking a window on the building's eastern side. Although the police were able to respond in about ninety seconds, the defendant successfully evaded capture by running out of a door on the building's southern side. Footage from surveillance cameras introduced by the state at trial show that the defendant was inside of the building for slightly more than three minutes. In the investigation that followed, the police determined that the broken window belonged to an office shared by two assistant state's attorneys. One of those attorneys was scheduled to commence jury selection for a criminal trial [of] the defendant on certain felony charges [pending felony charges] only two days after the break-in occurred. No other cases were scheduled to begin jury selection that week. Immediately after the break-in, various case files were discovered in an apparent state of disarray at the northern end of a central, common area located outside

of that room. Specifically, several files were found sitting askew on top of a desk with two open drawers; still other files were scattered on the floor below in an area adjacent to a horizontal filing cabinet containing similar files. Photographs admitted as full exhibits clearly show labels on these files reading 'TUL' and 'SUM.' Finally, in a short hallway at the opposite end of that same common area, the police found a black bag containing six bottles of industrial strength kerosene with their UPC labels cut off. The bag and its contents were swabbed, and a report subsequently generated by the Connecticut Forensic Science Laboratory included the defendant's genetic profile as a contributor to a mixture of DNA discovered as a result.

"Various other components of the state's case against the defendant warrant only a brief summary. The day after the break-in, the defendant called the public defender's office at the Norwalk courthouse to ask whether the courthouse was open and whether he was required to come in that day. The state also submitted evidence showing that the defendant drove a 2002 Land Rover Freelander with an aftermarket push bumper, a roof rack, and a broken taillight, and that surveillance videos from the area showed a similar vehicle driving by the courthouse repeatedly in the hours leading up to the break-in. Finally, the state submitted recordings of various telephone calls the defendant made after he had been taken into custody as a result of his conviction on the criminal charges previously pending against him in Norwalk. During one such telephone call, the defendant asked his brother, Christopher Stephenson, to get rid of 'bottles of things' for a heater, speculated about how the police located the vehicle, and attempted to arrange an alibi." (Footnote omitted.) *State* v. *Stephenson*, supra, 337 Conn. 646–47.

We noted in our previous opinion that the state sought to prove that the defendant had committed burglary in the third degree, attempt to commit tampering with physical evidence, and attempt to commit arson in the second degree under the following closely intertwined theories of factual and legal liability. *State* v. *Stephenson*, supra, 187 Conn. App. 27–28. "*As to the charge of burglary in the third degree*, the state claimed that the defendant had entered or remained unlawfully in the courthouse, when it was closed to the public and he had no license or privilege to be there for any lawful purpose, *with the intent to commit the crime of tampering with physical evidence therein*. Although the state conceded that the defendant had not completed the crime of tampering with physical evidence while he was inside the courthouse, it nonetheless claimed that he had intended to commit that offense within the courthouse by engaging in conduct constituting an attempt to commit that offense therein. On that score, the state further argued that the defendant had broken into the courthouse through the window of the assistant

state's attorney who was prosecuting him on two pending felony charges, entered the larger state's attorney's office and gone directly to the file cabinets where the state stored its case files, and in the short time he had there before the state police arrived in response to the silent alarm, begun to rummage through the state's case files in an effort to find and tamper with the contents of his own case files. Claiming that the defendant was desperate to avoid his impending trial, the state argued that the defendant thereby attempted to tamper with his case file by altering, destroying, concealing or removing its contents, and thus to impair the verity or availability of such materials for use against him in his upcoming trial. Finally, *as to the charge of attempt to commit arson in the second degree*, the state claimed that the defendant had committed that offense by breaking into the Norwalk courthouse as aforesaid, while carrying a duffel bag containing six canisters of industrial strength kerosene, and thereby intentionally taking a substantial step in a course of conduct planned to culminate in the commission of arson in the second degree by starting a fire inside the courthouse, *with the intent to destroy or damage the courthouse building, for the purpose of concealing his planned crime of tampering with physical evidence*, as described previously." (Emphasis added.) Id., 28–29.

## I

The defendant first claims that the state failed to present sufficient evidence to sustain his conviction of all three charges.[3] Specifically, he argues that the evidence was insufficient to prove that (1) he intended to tamper with evidence, an element common to all three offenses charged by the state, (2) he committed the completed crime of tampering with evidence or intended to destroy or damage a building, which are elements of the offense of attempt to commit arson in the second degree as charged in this case, and (3) the documents or materials he tampered with qualified as physical evidence for the purpose of § 53a-155 (a). The state counters that the evidence presented at the trial, and the fair inferences that the jury reasonably could draw therefrom, provided a sufficient basis to support his conviction. We agree with the state.

We begin with the relevant principles and our standard of review. Our Supreme Court has noted that "[a] party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. . . . In particular, before [an appellate] court may overturn a jury verdict for insufficient evidence, it must conclude that no reasonable jury could arrive at the conclusion the jury did. . . . Although the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . each of the basic and inferred facts underlying those

conclusions need not be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Rhodes*, 335 Conn. 226, 233, 249 A.3d 683 (2020).

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"Additionally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Covington*, 335 Conn. 212, 219, 229 A.3d 1036 (2020); see also *State* v. *Adams*, 327 Conn. 297, 304–305, 173 A.3d 943 (2017).

We are mindful, however, that inferences cannot be based on conjecture, surmise or possibilities. *State* v. *Josephs*, 328 Conn. 21, 35, 176 A.3d 542 (2018); *State* v. *Rodriquez*, 200 Conn. 685, 687, 513 A.2d 71 (1986); *State* v. *Ramey*, 127 Conn. App. 560, 565, 14 A.3d 474, cert. denied, 301 Conn. 910, 19 A.3d 177 (2011). As our Supreme Court recently has stated: "The line between permissible inference and impermissible speculation is not always easy to discern. . . . [P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis, but it must suffice to produce in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . . We therefore also must bear in mind that jurors are not

expected to lay aside matters of common knowledge or their own observations and experiences . . . . [C]ommon sense does not take flight when one enters a courtroom." (Citations omitted; internal quotation marks omitted.) *State* v. *Rhodes*, supra, 335 Conn. 238;[4] see also *State* v. *Torres*, 242 Conn. 485, 501, 698 A.2d 898 (1997) (noting that no clear line of demarcation exists between permissible inference and impermissible speculation); *State* v. *Hall-George*, 203 Conn. App. 219, 226, 247 A.3d 659 (line between permissible inferences and impermissible speculation not always easy to discern), cert. denied, 336 Conn. 934, 248 A.3d 709 (2021). Guided by these principles, we address each of the defendant's arguments in turn.

A

The defendant first argues that the evidence was insufficient to prove that he intended to tamper with physical evidence, an element common to all three offenses charged by the state in this case. The state counters that, upon a complete consideration of the entirety of the evidence,[5] sufficient evidence existed to prove that the defendant possessed the requisite intent. We agree with the state.

We begin by setting forth the relevant statutory language. See *State* v. *Knox*, 201 Conn. App. 457, 468, 242 A.3d 1039 (2020), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021). Section 53a-155 (a)[6] provides in relevant part: "A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding . . . ." See also *State* v. *Jordan*, 314 Conn. 354, 376–77, 102 A.3d 1 (2014).

The claim advanced by the defendant focuses on the element of his intent[7] as it relates to the offense of tampering with physical evidence. "As we have observed on multiple occasions, [t]he state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually [proven] by circumstantial evidence . . . ." (Internal quotation marks omitted.) *State* v. *Best*, 337 Conn. 312, 320, 253 A.3d 548 (2020); *State* v. *Francis*, 195 Conn. App. 113, 124, 223 A.3d 404 (2019) (same), cert. denied, 335 Conn. 912, 228 A.3d 662 (2020). Intent may be proven by the defendant's conduct before, during and after the commission of the crime. *State* v. *Bonilla*, 317 Conn. 758, 766, 120 A.3d 481 (2015); *State* v. *Raynor*, 175 Conn. App. 409, 432, 167 A.3d 1076 (2017), aff'd, 334 Conn. 264, 221 A.3d 401 (2019). "Such conduct yields facts

and inferences that demonstrate a pattern of behavior and attitude . . . that is probative of the defendant's mental state." (Internal quotation marks omitted.) *State* v. *Bonilla*, supra, 766.

In his supplemental brief, the defendant focuses on the dearth of evidence regarding the prosecutors' files on the floor; specifically, how these materials ended up in disarray on the floor and the absence of any direct connection to the defendant. This myopic view, however, ignores the other evidence produced by the state, and the resulting permissible inferences, that provided a sufficient basis for the jury to find that the defendant intended to tamper with physical evidence.

In the hour prior to the 11 p.m. Sunday night break-in, surveillance cameras recorded the defendant slowly driving an SUV registered to his stepfather past the front of the courthouse and in and out of the courthouse parking lot. *State* v. *Stephenson*, supra, 187 Conn. App. 25. Additionally, these cameras captured the defendant, dressed in all black and carrying a dark colored bag, approach the side of the courthouse. Id. He entered the prosecutors' office in the closed courthouse by breaking a window. *State* v. *Stephenson*, supra, 337 Conn. 646.

The broken window provided ingress to an office used by the prosecutor who was scheduled to begin jury selection in a case involving the pending felony charges against the defendant. Id. The defendant's case was the only one scheduled for jury selection that week. Various files, including those labeled "TUL" and "SUM," were found in disarray. Id. The police discovered a bag containing six bottles of industrial kerosene,[8] a flammable liquid, in the prosecutors' area with numerous combustibles, and testing revealed the defendant's genetic profile as a contributor to the DNA mixture recovered from the bag and its contents. Id., 646–47.

Following the break-in, the defendant called the office of the public defender and inquired whether the courthouse was open and whether he was required to appear in court that day. Id., 647. He subsequently made various incriminating statements. The defendant asked his brother to "get rid of 'bottles of things' for a heater, speculated about how the police located the [SUV], and attempted to arrange an alibi." Id.

The evidence presented at the defendant's trial detailing his actions before, during and after the break-in, and the reasonable inferences drawn therefrom, provided a sufficient basis for the jury reasonably to conclude that the defendant had entered the courthouse with the intent to alter, destroy, conceal, or remove any record, document or thing with the purpose of impairing its verity or availability for his imminent trial on the pending felony charges. See, e.g., *State* v. *Soyini*, 180 Conn. App. 205, 222, 183 A.3d 42, cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018). Specifically, the jury reasonably

could infer that the defendant planned to engage in criminal conduct on the basis of the manner in which he conducted reconnaissance of the closed courthouse late at night when it was likely that no one would be present. The jury also reasonably could infer, on the basis of his chosen point of entry, that the defendant wanted to gain access to the office of the prosecutor who was handling his pending felony charges and to his specific file. If the defendant's sole intent was to damage the courthouse, he could have chosen to make entry into the courthouse at any number of other locations. Thus, the jury reasonably could infer that there was significance to the point of entry chosen by the defendant.

Most importantly, the evidence and testimony regarding the scattered files on the floor of the prosecutors' office provided a basis from which the jury could make a series of additional reasonable inferences. First, the jury reasonably could infer, from common sense, logic, and the testimony of Suzanne Vieux, the supervisory assistant state's attorney at the courthouse, that the staff of the prosecutors' office would not have left the files strewn on the floor in the haphazard manner that is depicted in state's exhibit 27. Indeed, other photographs of the prosecutors' office admitted into evidence depict an orderly, well maintained, and professional office that is consistent with the requisite organization and careful recordkeeping necessary to prosecute a large volume of cases.

The inference that the staff would not have left these files in such a manner also would certainly permit a successive, reasonable inference that it was the defendant who had been searching through these files at the time he realized that there was a police presence at the courthouse. The fact that two of those files were associated with other defendants who had last names alphabetically close to the defendant's last name buttresses the inference that it was the defendant who had been going through these files and, more importantly, searching for his own case file. Indeed, the jury reasonably could infer that the defendant was searching for the file related to his case because he believed, even if mistakenly so, that it likely contained evidence that would be introduced against him at his criminal trial and that, if he could tamper with that evidence, the state would be unable to secure a conviction against him.[9]

The fact that the defendant brought six bottles of industrial strength kerosene into an office filled with combustible materials also provided a reasonable basis for the jury to infer that the defendant had intended to start a fire that would consume the file associated with his case and any physical evidence contained therein. Indeed, the jury reasonably could infer that the defendant knew that he could not simply steal or remove just his file from the office because that would make

it easier for the police to determine who had broken into the courthouse. Instead, the jury reasonably could have inferred that the defendant understood that to cover-up his destruction of the evidence in his case, he also would have needed to destroy other files as well.

The mere fact that such a fire might have also caused perhaps greater damage to the courthouse also does not in any way negate the jury's right reasonably to infer that he intended to tamper with physical evidence associated with his case. Indeed, from this evidence, there simply is no reason why the jury would be prohibited from determining that the defendant had the dual intent to tamper with the physical evidence in his case as well as damage the courthouse itself and thereby delay his impending court date.

These reasonable inferences are further supported by the defendant's conduct following his break-in at the courthouse and flight therefrom, including his call to the public defender's office inquiring whether the courthouse would be open on the day after the break-in and incriminating statements he made to his family. See *State* v. *Rhodes*, supra, 335 Conn. 244 (in viewing evidence that could yield contrary inferences, jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those consistent with innocence). The fact that this consciousness of guilt evidence could have been used by the jury to infer that the defendant had an intent to commit arson in the courthouse more generally does not mean that the jury was prohibited from using the same evidence to support an inference, in conjunction with all of the other evidence and inferences reasonably drawn therefrom, that the defendant had the necessary intent to tamper with the physical evidence in his case. See *State* v. *Richards*, 196 Conn. App. 387, 403, 229 A.3d 1157 (2020) (consciousness of guilt evidence may be used by jury to draw inference of intent to commit criminal offense), aff'd,     Conn.    ,    A.3d    (2021); see generally *State* v. *Otto*, 305 Conn. 51, 73, 43 A.3d 629 (2012) (Supreme Court rejected defendant's argument that consciousness of guilt evidence could be used only to prove guilty act and not level of intent that attended such act, and noted that consciousness of guilt evidence is part of evidence jury can use to draw inference of intent to kill); *State* v. *Sivri*, 231 Conn. 115, 130, 646 A.2d 169 (1994) (consciousness of guilt evidence is part of evidence jury can use to draw inference of intent to kill); *State* v. *Grant*, 149 Conn. App. 41, 50, 87 A.3d 1150 (consciousness of guilt evidence is part of evidence from which jury may draw inference of intent to kill), cert. denied, 312 Conn. 907, 93 A.3d 158 (2014); *State* v. *Santos*, 41 Conn. App. 361, 371, 675 A.2d 930 (intent to kill may be inferred from defendant's failure to seek medical assistance for victim and consciousness of guilt evidence), cert. denied, 237 Conn. 932, 677 A.2d 1374 (1996).

We conclude, on the basis of this chain of evidence and the permissible inferences drawn therefrom, that the jury reasonably could have found that the defendant, who possessed a strong motive, broke into the prosecutors' area of the courthouse with the intent to tamper with evidence. See *State* v. *Soyini*, supra, 180 Conn. App. 222; see generally *State* v. *Bonilla*, supra, 317 Conn. 768 (while not essential for state to prove motive for crime, state's case strengthened when it can show adequate motive).

In reaching this conclusion, we are mindful that "[p]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks omitted.) *State* v. *Hall-George*, supra, 203 Conn. App. 226. Further, we emphasize that, in reviewing a claim of insufficient evidence, we construe the evidence in the light most favorable to sustaining the verdict and ask whether there is a reasonable view of the evidence that supports the verdict. *State* v. *Luciano*, 204 Conn. App. 388, 396–98, 253 A.3d 1005, cert. denied, 337 Conn. 903, 252 A.3d 362 (2021); see also *State* v. *Rhodes*, supra, 335 Conn. 233 (before reviewing court may overturn jury verdict for insufficient evidence, it must conclude that no reasonable jury could arrive at conclusion that jury did); *State* v. *Torres*, supra, 242 Conn. 501–502 (reviewing court must uphold jury's verdict when it is sufficiently supported by circumstantial evidence even though another jury rationally could have reached different conclusion). Additionally, "we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably *could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Capasso*, 203 Conn. App. 333, 338, 248 A.3d 58, cert. denied, 336 Conn. 939, 249 A.3d 352 (2021); see also *State* v. *Sivri*, supra, 231 Conn. 130 (proof beyond reasonable doubt properly may be based on chain of inferences, each link of which may depend for its validity on validity of prior link in chain); *State* v. *James*, 141 Conn. App. 124, 132, 60 A.3d 1011 (same), cert. denied, 308 Conn. 932, 64 A.3d 331 (2013).

In the present case, the totality of the evidence presented by the state regarding the defendant's actions, and the permissible inferences drawn therefrom, support the jury's finding that the defendant intended to

tamper with evidence. We therefore reject the defendant's claim that the evidence was insufficient to prove his intent.

B

The defendant next argues that the evidence was insufficient to prove that he committed the crime of attempt to commit arson in the second degree. Specifically, he contends that the state failed to prove that he had committed the completed crime of tampering with physical evidence, which, due to the information, was a necessary element of the offense of attempt to commit arson in the second degree. He also claims that the state failed to prove that he had intended to destroy or damage a building, as required by § 53a-112 (a) (1) (B). We are not persuaded.

We begin our analysis with the language of the operative information. Count three of the information provides in relevant part: "And said [s]tate's [a]ttorney further . . . alleges that in the [c]ity of Norwalk on or about the [third] day of March, 2013, the said defendant . . . with intent to destroy and damage a building, did an act, which, under the circumstances as he believed them to be, was an act which constituted a substantial step in a course of conduct planned to culminate in starting a fire, and such fire was intended to conceal the crime of tampering with physical evidence in violation of [§§] 53a-112 (a) (1) (B), 53a-49 (a) (2), and 53a-155 (a) (1)."

Next, we turn to the relevant statutory text. Section 53a-112 (a) provides in relevant part: "A person is guilty of arson in the second degree when, with intent to destroy or damage a building, as defined in section 53a-100, (1) he starts a fire or causes an explosion and . . . (B) such fire or explosion was intended to conceal some other criminal act . . . ." See also *State* v. *Rivera*, 268 Conn. 351, 353 n.4, 844 A.2d 191 (2004).

Section 53a-49 (a) provides in relevant part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Our inquiry therefore into whether a "substantial step" has occurred focuses not on what remains to be done but, rather, on what the defendant already has done. *State* v. *Daniel B.*, 331 Conn. 1, 13, 201 A.3d 989 (2019).

Thus, in order to convict the defendant of attempt to commit arson in the second degree in violation of §§ 53a-49 (a) (2) and 53a-112 (a) (1) (B), the state was required to prove, beyond a reasonable doubt, that the defendant acted with the specific intent to commit arson in the second degree, which, in turn, includes the

intent to start a fire to conceal the crime of tampering with physical evidence, and that the defendant took a substantial step in a course of conduct planned to culminate in his commission of the crime.[10] See *State* v. *Servello*, 59 Conn. App. 362, 370, 757 A.2d 36, cert. denied, 254 Conn. 940, 761 A.2d 764 (2000). With this in mind, we consider each of the defendant's arguments in turn.

1

The defendant first contends that the state failed to present any evidence that any "records, documents, or items had been altered, destroyed, concealed, or removed" and, therefore, that there was insufficient evidence for the jury to find that he had tampered with physical evidence, which was the "other criminal act" that he had intended to conceal, as charged in the information. The state counters that proof of the completed crime of tampering with physical evidence was not a requirement for conviction; rather, its burden was satisfied upon proof of the defendant's intent to tamper with physical evidence and that his actions constituted a substantial step in a course of conduct planned to culminate in his commission of the crime. We agree with the state.

"An attempt of a crime is accomplished when a person intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . . The defendant also must have possessed the specific intent to commit the underlying crime. *An attempt is an inchoate crime, meaning that it is unfinished or begun with the proper intent but not finished.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Jones*, 96 Conn. App. 634, 641, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006); see also *State* v. *Carey*, 13 Conn. App. 69, 74–75, 534 A.2d 1234 (1987) (attempt under § 53a-49 is act or omission done with intent to commit some other crime, and underlying rationale is that, although defendant may have failed in his or her purpose, conduct remains criminally culpable); see generally I. Robbins, "Double Inchoate Crimes," 26 Harv. J. on Legis. 1, 3 (1989) ("The inchoate crimes of attempt, conspiracy, and solicitation are well established in the American legal system. 'Inchoate' offenses allow punishment of an action even though [the actor] has not consummated the crime that is the object of his efforts." (Footnote omitted.)).

"[T]he standard for the substantial step element of criminal attempt focuse[s] on what the actor has already done and not what remains to be done. . . . The substantial step must be at least the start of a line of conduct which will lead naturally to the commission of a crime. . . . [T]he ultimate measure of the sufficiency of the defendant's conduct to constitute a substantial step in

a course of conduct planned to culminate in the commission of [a crime] is not, to reiterate, how close in time or place or final execution his proven conduct came to the consummation of that crime, but whether such conduct, if at least the start of a line of conduct leading naturally to the commission of the crime, strongly corroborated his alleged criminal purpose." (Internal quotation marks omitted.) *State* v. *Juarez*, 179 Conn. App. 588, 600, 180 A.3d 1015 (2018), cert. denied, 331 Conn. 910, 203 A.3d 1245 (2019); see also *State* v. *Carter*, 317 Conn. 845, 856, 120 A.3d 1229 (2015). Additionally, our Supreme Court has reasoned that, "[w]hen the legislature codified the crime of attempt and incorporated the substantial step as one of the means by which a defendant could be held liable, it adopted the substantial step provision from the Model Penal Code. . . . The Model Penal Code's substantial step provision did not require a last proximate act or one of its various analogues in order to permit the apprehension of dangerous persons at an earlier stage than . . . other approaches without immunizing them from attempt liability. . . . The drafters of the Model Penal Code explained that just because further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." (Citations omitted; internal quotation marks omitted.) *State* v. *Daniel B.*, supra, 331 Conn. 15–16.

Our analysis is informed by *State* v. *Servello*, supra, 59 Conn. App. 364–65. There, the state charged the incarcerated defendant with attempt to commit arson in the second degree by hiring another individual to start a fire. Id., 365. The defendant had attempted to hire an undercover state police trooper, posing as a Mafia associate, to set fire to a courthouse and to the house and car of a prosecutor. Id. On appeal, the defendant claimed, inter alia, that the evidence was insufficient to establish that his conduct had constituted a substantial step toward hiring the undercover state trooper. Id., 371. In rejecting this claim, we noted that the pertinent question was whether the defendant had committed a substantial step toward hiring the undercover trooper to commit an arson, and not whether that act had been completed. Id., 372. "Any other interpretation would impose a requirement of a more stringent standard of proof for attempt than is provided by § 53a-49." Id., 375.

Similarly, in the present case, the state was not required to prove the completed crime of tampering with physical evidence for purposes of convicting the defendant of attempt to commit arson in the second degree in violation of §§ 53a-49 and 53a-112 (a) (1) (B). We iterate that the state's burden was to prove, beyond a reasonable doubt, that the defendant had intended to start a fire in the courthouse to conceal the crime of tampering with physical evidence and that he had taken

a substantial step in a course of conduct planned to culminate in his commission of the crime. We conclude, therefore, that this sufficiency argument raised by the defendant must fail.

2

The defendant next argues that the evidence was insufficient to prove that he intended to destroy or damage a building. Specifically, he claims that the state's theory of the case was that he intended to *damage or destroy some of the contents of the building*, namely, the evidence contained in the prosecutors' area of the courthouse, but that the state failed to show that he intended to *damage or destroy the structural components of the building itself*. The state counters that, "one intends the natural consequences of his/her actions, and, therefore, the defendant's intent to damage or destroy the contents of the building necessarily supports the inference that he also intended to damage or destroy the building itself." We agree with the state.

The state presented evidence that the defendant entered the courthouse with six bottles of industrial strength kerosene. The jury heard testimony from the state's expert witness, Jack Hubball, that kerosene is a flammable liquid that could be used as an accelerant to start a fire.[11] Hubball further testified that if kerosene were poured on combustibles, such as papers, rags, cloth, curtains, carpeting, chairs, or the materials on chairs, both the kerosene and the combustibles will burn and propagate the fire.

The specific intent to damage or destroy a building[12] is an essential element of the crime of arson in the second degree. *State* v. *Chasse*, 51 Conn. App. 345, 369, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "[I]t is well established that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Servello*, supra, 59 Conn. App. 369.

The jury may infer that a defendant intended the natural consequences of his actions. *State* v. *McRae*, 118 Conn. App. 315, 320, 983 A.2d 286 (2009); see also *State* v. *Daniel G.*, 147 Conn. App. 523, 538, 84 A.3d 9, cert. denied, 311 Conn. 931, 87 A.3d 579 (2014). Here, the defendant entered the courthouse while carrying six bottles of industrial strength kerosene, a chemical substance that generates more heat and smoke than

standard kerosene. His entry point was where the prosecutors' offices and their files were located. The jury reasonably could find that, by bringing this flammable liquid into an area packed with files and other combustibles, the defendant possessed the requisite intent to damage or destroy the building as a natural consequence of his actions had he completed the act of starting a fire in that area of the courthouse. Additionally, we note that, even if the defendant's primary intent was to damage or destroy the contents of the building, i.e., the files contained in the prosecutors' office area, the jury reasonably could have inferred that he also intended to damage the building to achieve that objective. See, e.g., *State* v. *Ramey*, supra, 127 Conn. App. 568 (although suicide may have been defendant's primary goal, jury still reasonably could infer that he intended to damage building as means to that goal). For these reasons, we conclude that the defendant's sufficiency argument regarding the charge of attempt to commit arson in the second degree fails.

C

The defendant finally argues that the evidence was insufficient to prove that the documents or materials he had tampered with qualified as physical evidence. Specifically, he claims that the state failed to prove that any materials in the prosecutors' case files constituted "physical evidence" as defined by General Statutes § 53a-146 (8). The state responds that the text of § 53a-155 does not incorporate the definition of physical evidence set forth in § 53a-146 (8). We conclude that the plain language of § 53a-155 prohibits the alteration, destruction, concealment or removal of *any record, document or thing* with the purpose of impairing its verity or availability in an official proceeding. Accordingly, we reject the defendant's argument.

This specific sufficiency argument challenges the interpretation of the text of § 53a-155. "When . . . the claim of insufficient evidence turns on the appropriate interpretation of a statute . . . our review is plenary. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and

unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Webster*, 308 Conn. 43, 51–52, 60 A.3d 259 (2013); see also *State* v. *Sabato*, 152 Conn. App. 590, 595–96, 98 A.3d 910 (2014), aff'd, 321 Conn. 729, 138 A.3d 895 (2016); see generally *State* v. *Jackson*, 39 Conn. 229, 230 (1872) ("[i]t is generally sufficient to describe a statutory [offense] in the words of the statute").

We begin our analysis with the title and text of § 53a-155. Specifically, that statute provides in relevant part: "Tampering with or fabricating *physical evidence*: Class D felony. (a) A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) *Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding* . . . ." (Emphasis added.) General Statutes (Rev. to 2013) § 53a-155 (a). Next, we consider the statutory definition of the term "physical evidence." Section 53a-146 (8) provides: " 'Physical evidence' means any article, object, document, record or other thing of physical substance which is or is about to be produced or used as evidence in an official proceeding."

Despite the absence of the phrase "physical evidence" in the text of § 53a-155 identifying it as an element of that crime, the defendant contends that its inclusion in that statute's title signals an incorporation of the § 53a-146 (8) definition into § 53a-155. He further contends that, in the absence of any evidence as to what the files from the prosecutors' office actually contained, the state failed to meet its burden as to this element of § 53a-155. We are not persuaded.

Our Supreme Court has stated that, although a statutory title may provide some evidence as to its meaning, it cannot trump an interpretation that is based on the statutory text. *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 75, 52 A.3d 636 (2012); see also *State* v. *Tabone*, 279 Conn. 527, 539–40 n.14, 902 A.2d 1058 (2006); *State* v. *Castillo*, 165 Conn. App. 703, 726 n.7, 140 A.3d 301 (2016), aff'd, 329 Conn. 311, 186 A.3d 672 (2018); 1A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2009) § 18:7, pp. 77–78 (title of statute neither controls nor limits plain meaning of statutory text and, where text is clear and unambiguous, title is not considered to determine meaning of statute). Additionally, in *In re Jacklyn H.*, 162 Conn. App. 811, 826 n.14, 131 A.3d 784

(2016), this court determined that, although the title of General Statutes § 52-146s, a statute setting forth various definitions, contained the phrase "confidential information," the text of the statute used the word "privileged," and clearly intended that a privileged status would apply to communications and records between a professional counselor and a person consulting such a counselor.

On the basis of the plain language of the text of § 53a-155, we conclude that the state was required to prove beyond a reasonable doubt that the defendant, believing that an official proceeding was pending, altered, destroyed, concealed or removed *any record, document or thing*, with the purpose of impairing its verity or availability in an official proceeding. In other words, despite the title of § 53a-155, we are not persuaded that our legislature intended to incorporate the definition of "physical evidence" contained in § 53a-146 (8) as an element of § 53a-155. The defendant's argument, therefore, must fail.

II

The defendant next claims that the court improperly excluded evidence regarding his mental state prior to the commission of these offenses. Specifically, he argues that the court erred in sustaining the state's objection to the testimony of Attorney James LaMontagne, who represented the defendant with respect to the pending felony charges. LaMontagne would have testified that, prior to the break-in at the courthouse, the defendant had stated that he was going to plead guilty to the pending felony charges. The defendant contends that the court abused its discretion by sustaining the state's hearsay objection and that this error was harmful. The state concedes that the court improperly excluded this testimony but maintains that any error was harmless. We agree with the state.

The following additional facts are necessary for our discussion. Outside the presence of the jury, LaMontagne stated during the defendant's offer of proof that he had represented the defendant with respect to the pending felony charges that had been brought in 2012. The defendant pleaded guilty to these charges on Tuesday, March 5, 2013, two days after the break-in at the courthouse. LaMontagne explained that he had a lengthy discussion with the defendant on Friday, March 1, 2013, prior to the break-in. During that conversation, LaMontagne came to believe that the trial on the pending felony charges would not go forward because a plea bargain had been reached.

Defense counsel subsequently argued that he had proffered the testimony of LaMontagne "to establish at least a defense to the motive. [Defense counsel] had asked [LaMontagne] . . . whether or not he anticipated going to trial the following week based on his

conversations with [the defendant] on the Friday before the incident, and he said, no, and that's because [the defendant] had told [LaMontagne] he was going to plead guilty." Defense counsel acknowledged that what the defendant had said to LaMontagne on March 1, 2013, constituted hearsay but claimed it was admissible, under, inter alia, the "then existing mental—mental state of the declarant at the time; that is, he did not have a future intention to go to trial, and, therefore, have an intention to get out [of] it somehow. He was going to accept responsibility. He was going to plead guilty . . . ." Defense counsel further claimed that the inability to call LaMontagne as a witness impacted the defendant's constitutional right to present a defense. The state argued that the defendant's statements to LaMontagne regarding his intention to plead guilty were inadmissible hearsay and not relevant.

After hearing further argument, the court agreed with the state that LaMontagne's proffered testimony constituted inadmissible evidence. The court further described the statements as a means "of the defendant testifying without taking the witness stand."

On appeal, the defendant claims that the court improperly excluded the evidence of the defendant's then existing mental state. He acknowledges that this evidence constituted hearsay but contends that it was admissible pursuant to the "state of mind exception" codified in § 8-3 (4) of the Connecticut Code of Evidence.[13]

The defendant argues that he was harmed by this improper evidentiary ruling because the exclusion of LaMontagne's testimony substantially affected the jury's verdict. In the alternative, the defendant contends that the improper exclusion of this evidence violated his state and federal constitutional rights to present a defense, and that the state cannot demonstrate that the court's improper ruling was harmless beyond a reasonable doubt.

In its appellate brief, the state agrees that the court abused its discretion in excluding LaMontagne's testimony from evidence. The state claims, however, that the exclusion of this evidence did not deprive the defendant of his constitutional rights to present a defense. Finally, the state maintains that the defendant failed to establish harm as a result of the court's improper evidentiary ruling. We agree with state.

A

We first consider whether the court's improper evidentiary ruling violated the defendant's state and federal constitutional rights to present a defense. We consider this first because the resolution of that question dictates the appropriate harmless error test that we must apply. As our Supreme Court has stated: "Our standard of review of an evidentiary ruling is dependent

on whether the claim is of constitutional magnitude. If the claim is of constitutional magnitude, the state has the burden of proving [that] the constitutional error was harmless beyond a reasonable doubt. Otherwise, in order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal quotation marks omitted.) *State* v. *Swinton*, 268 Conn. 781, 797–98, 847 A.2d 921 (2004).

Specifically, the defendant contends that his rights to present a defense pursuant to the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution,[14] were violated by the court's ruling, which, he claims, excluded "the most compelling evidence available to [him, which] was crucial to his defense." The state counters that this evidence was neither central nor crucial to his defense and, therefore, that the impropriety of the court's ruling did not rise to the level of a constitutional violation.

Our Supreme Court has recognized that the federal constitution requires that a criminal defendant be afforded a meaningful opportunity to present a complete defense. *State* v. *Andrews*, 313 Conn. 266, 275, 96 A.3d 1199 (2014); *State* v. *Cerreta*, 260 Conn. 251, 260, 796 A.2d 1176 (2002). "In plain terms, the defendant's right to present a defense is the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . It guarantees the right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . . Therefore, exclusion of evidence offered by the defense may result in the denial of the defendant's right to present a defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 320 Conn. 781, 817, 135 A.3d 1 (2016); see also *State* v. *Holley*, 327 Conn. 576, 593–94, 175 A.3d 514 (2018); *State* v. *Cerreta*, supra, 260–61.

Additionally, our Supreme Court has stated that "[w]hether a trial court's . . . restriction of a defendant's or defense [witness'] testimony in a criminal trial deprives a defendant of his [constitutional] right to present a defense is a question that must be resolved on a [case-by-case] basis. . . . The primary consideration in determining whether a trial court's ruling violated a defendant's right to present a defense is the centrality of the excluded evidence to the claim or claims raised by the defendant at trial." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 313 Conn. 276; *State* v. *Sandoval*, 263 Conn. 524, 546, 821 A.2d 247 (2003).

The defendant claims that his discussion with LaMontagne regarding his intention to plead guilty constituted "the most compelling evidence available to [him] and was crucial to his defense." In support of his claim, he

relies on *State* v. *Cerreta*, supra, 260 Conn. 251. In that case, the defendant claimed, inter alia, that the trial court improperly had excluded certain hair and finger-print evidence obtained at the crime scene that forensic testing subsequently revealed could not have come from the defendant. Id., 257. The trial court granted the state's motion in limine to preclude this evidence on the basis of relevancy. Id., 259.

Our Supreme Court first determined that the trial court had abused its discretion in granting the state's motion in limine on the ground that this evidence was irrelevant. Id., 262–63. Next, it concluded that the improper exclusion of this evidence violated the defendant's constitutional rights to present a defense. Id., 264. "The excluded evidence not only was relevant to the primary issue at trial, namely, the identity of the perpetrator, it was central to the defendant's claim of innocence. The defendant's claim was, in essence, that [two of] the state's key witnesses who had provided the only evidence connecting the defendant to the crime, had concocted their statements to the police and their testimony out of animus toward the defendant and a desire to collect the substantial reward being offered in the case. The excluded evidence was, in essence, the most compelling evidence available to the defendant and was crucial to his defense. We conclude that the evidence was of such importance to the defendant's ability to refute the [two witnesses'] testimony that its exclusion violated the defendant's right under the sixth and fourteenth amendments to defend against the state's accusations." (Footnote omitted.) Id.

This appeal is distinguishable from the circumstances found in *State* v. *Cerreta*, supra, 260 Conn. 251. In *Cerreta*, the crimes at issue had remained unsolved for nine years. Id., 255. The two witnesses who eventually implicated the defendant in the crimes were sisters; one sister had been married to the defendant twice, and the other had engaged in an affair with the defendant during the second marriage. Id., 255. The state's case "rested entirely upon the testimony" of these two witnesses. Id., 265.

The excluded evidence in the present case lacks the significance or importance of that in *State* v. *Cerreta*, supra, 260 Conn. 251. Here, the state presented considerable evidence regarding the defendant's activities just prior to, during, and after the break-in to establish both his identity as the perpetrator and his intent.[15] Additionally the defendant faced a period of incarceration. His stated interest in pleading guilty may have been diminished upon the realization that the offered plea agreement involved incarceration. Thus, the defendant's motivation for disrupting or delaying court proceedings remained, despite the prospect of this agreement. Finally, we note that the defendant was able to present his defense that he was not the perpetrator despite the

court's ruling regarding his statements to LaMontagne. Specifically, he presented alibi evidence via the testimony of his brother and challenged the various aspects of the state's evidence regarding the issue of identity. For these reasons, we disagree with the defendant's assertion that he was deprived of his constitutional right to present a defense as a result of the court's improper evidentiary ruling.

B

As a result of our conclusion that the trial court's evidentiary error did not implicate the defendant's constitutional rights, we next address the defendant's alternative claim that he has satisfied his burden to demonstrate that the court's improper evidentiary ruling was harmful error. Specifically, he contends that the exclusion of his statement to LaMontagne substantially swayed the jury's verdict, as this evidence was important and was not cumulative of other evidence. The defendant argues that there was no other evidence of his intent prior to the break-in and the state's case was not strong. The state responds that this evidence did not establish a lack of intent, identity or motive with respect to its prosecution of the defendant. The state argues that this evidentiary error by the court did not substantially affect the verdict. We agree with the state.

"The law governing harmless error for nonconstitutional evidentiary claims is well settled. When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Fernando V.*, 331 Conn. 201, 215, 202 A.3d 350 (2019); *State* v. *Favoccia*, 306 Conn. 770, 808–809, 51 A.3d 1002 (2012).

The defendant correctly points out that the court excluded the only evidence regarding his intention to plead guilty to the pending felony charges prior to the break-in. We disagree, however, with his overestimation

of the strength and significance of this evidence. His intention on Friday, March 1, 2013, to enter a guilty plea to the pending felony charges may not have eliminated his intent to commit the offenses of burglary in the third degree, attempt to tamper with physical evidence and attempt to commit arson in the second degree during the late night hours of March 3, 2013. As we noted, the realization of the effect of such a plea, i.e., a period of incarceration, may have provided the defendant with an incentive to commit these offenses. Further, as we repeatedly have pointed out in this opinion, the state introduced substantial evidence of the defendant's identity and actions with respect to the charged offenses. For these reasons, we conclude that a fair assurance exists that the improper exclusion of LaMontagne's testimony did not substantially affect the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] All references to § 53a-155 are to the 2013 revision of that statute.

[2] We comment briefly on the somewhat unique situation in which this panel of the Appellate Court has reached a conclusion contrary to that of the 2019 panel that initially heard this appeal. See *State* v. *Stephenson*, supra, 187 Conn. App. 20. We frequently have stated and consistently have adhered to the policy that "we cannot overrule the decision made by another panel of this court in the absence of en banc consideration." *State* v. *Freddy T.*, 200 Conn. App. 577, 589 n.14, 241 A.3d 173 (2020); see also *State* v. *Jackson*, 198 Conn. App. 489, 507 n.12, 233 A.3d 1154, cert. denied, 335 Conn. 957, 239 A.3d 318 (2020); *State* v. *White*, 127 Conn. App. 846, 858 n.11, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011).

The contrary result reached in this opinion from that of the 2019 panel is made possible as a result of the remand order from our Supreme Court. See, e.g., *State* v. *Siler*, 204 Conn. App. 171, 178–79, 253 A.3d 995 (2021) (our Supreme Court is ultimate arbiter of law in this state, and this court is bound by its decisions). Specifically, it reversed the judgment of the 2019 Appellate Court panel and directed us "to address the claims raised by the defendant in his initial appeal [and consider] the sufficiency issued raised in [our] previous decision [only after supplemental briefing]." *State* v. *Stephenson*, supra, 337 Conn. 654. As a result of this order, our Supreme Court effectively vacated the 2019 opinion from this court.

Having the benefit of the supplemental briefing of the parties, and guided by the discussion and analysis contained in our Supreme Court's opinion in *State* v. *Rhodes*, 335 Conn. 226, 238, 249 A.3d 683 (2020), regarding the " 'line between permissible inference and impermissible speculation,' " we respectfully have reached an outcome different from the one reached by the 2019 panel of this court, which had determined that the evidence was insufficient to support the jury's verdict. *State* v. *Stephenson*, supra, 187 Conn. App. 39. For the reasons set forth in part I of this opinion, we have determined that the jury's verdict should be upheld.

[3] We consider the defendant's sufficiency claims first due to the nature of the remedy. "We begin with this issue because if the defendant prevails on the sufficiency claim, [he] is entitled to a directed judgment of acquittal rather than to a new trial. See *State* v. *Calabrese*, 279 Conn. 393, 401, 902 A.2d 1044 (2006); see also *State* v. *Smith*, 73 Conn. App. 173, 178, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002); *State* v. *Theriault*, 38 Conn. App. 815, 823 n.7, 663 A.2d 423 ([a]lthough we find the defendant's [jury charge claim] dispositive, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge if [he] prevails on this claim), cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995)." (Internal quotation marks omitted.) *State* v. *Badaracco*, 156 Conn. App. 650, 656 n.11, 114 A.3d 507 (2015).

[4] In his concurring and dissenting opinion in *Rhodes*, Justice Ecker, joined by Justices Palmer and McDonald, observed: "No objective formula or uniform template tells us how to distinguish reasonable inference from impermissible speculation." *State* v. *Rhodes*, supra, 335 Conn. 266 (*Ecker, J.*,

concurring in part and dissenting in part).

[5] See *State* v. *Petersen*, 196 Conn. App. 646, 656–57, 230 A.3d 696 (established case law directs appellate courts to review claims of evidentiary insufficiency in light of *all* evidence adduced at trial), cert. denied, 335 Conn. 921, 232 A.3d 1104 (2020).

[6] "Section 53a-155 was amended in 2015 to add that one may be guilty of tampering during a criminal investigation or when a criminal proceeding is about to commence." *State* v. *Stephenson*, supra, 187 Conn. App. 33 n.9; see generally *State* v. *Lamantia*, 336 Conn. 747, 779–84, 250 A.3d 648 (2020) (*D'Auria, J.*, dissenting) (summarizing history and circumstances of 2015 amendment to § 53a-155). This amendment does not impact our analysis in the present case.

[7] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." See also *State* v. *Reed*, 176 Conn. App. 537, 549, 169 A.3d 326, cert. denied, 327 Conn. 974, 174 A.3d 194 (2017); *State* v. *Raynor*, 175 Conn. App. 409, 431–32, 167 A.3d 1076 (2017), aff'd, 334 Conn. 264, 221 A.3d 401 (2019).

[8] Jack Hubball, a chemist in the state forensic laboratory, testified that industrial kerosene generates more BTUs when burned, has a stronger odor and results in more smoke as compared to standard kerosene.

[9] The fact that the defendant may not have been successful in locating his own file does not in any way vitiate the right of the jury to draw the inference that he was looking for his own file.

[10] General Statutes § 53a-49 (b) provides in relevant part: "Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law . . . (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances . . . ." See also *State* v. *Osbourne*, 138 Conn. App. 518, 527–28, 53 A.3d 284, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012).

[11] See footnote 8 of this opinion.

[12] General Statutes § 53a-100 (a) provides in relevant part: "(1) 'Building' in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle or any building with a valid certificate of occupancy. Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . ." See also *State* v. *Domian*, 35 Conn. App. 714, 724–25, 646 A.2d 940 (1994), aff'd, 235 Conn. 679, 688 A.2d 1333 (1996).

[13] Section 8-3 (4) of the Connecticut Code of Evidence provides: "Statement of then Existing Mental or Emotional Condition. A statement of the declarant's then existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed." See, e.g., *State* v. *Perkins*, 271 Conn. 218, 256 n.36, 856 A.2d 917 (2004); *State* v. *Mekoshvili*, 195 Conn. App. 154, 160–61, 223 A.3d 834, cert. granted, 334 Conn. 923, 223 A.3d 60 (2020).

[14] The defendant has not provided an independent analysis of his state constitutional claim under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), and, therefore, we consider that claim abandoned and unreviewable. See, e.g., *State* v. *Rivera*, 335 Conn. 720, 725 n.2, 240 A.3d 1039 (2020); see also *State* v. *Wood*, 159 Conn. App. 424, 431 n.4, 123 A.3d 111 (2015) ("Because the defendant has not briefed his claims separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue."

(Internal quotation marks omitted.)).

[15] We iterate that, "[w]hile motive is not an element of a crime that the state has the burden of proving, the presence of evidence of motive may strengthen the state's case. . . . It is conceivable that the evidence adduced in a particular case would be so inconclusive that without evidence of motive a judgment of acquittal might be required because the jury could not rationally find that the state had proved the elements of the charged offense beyond a reasonable doubt. In such a case, a judgment of acquittal might be required not because motive was an element of the offense, but because evidence of motive would strengthen the state's otherwise insufficient evidence of an element of the offense, *such as identification or intent*." (Citation omitted; emphasis added.) *State* v. *Pinnock*, 220 Conn. 765, 773, 601 A.2d 521 (1992); see also *State* v. *Richards*, supra, 196 Conn. App. 402 (intent to kill may be inferred from evidence that defendant had motive to kill).

———————————————————